JOHN J. BROWDER et als. v. POLLY JACKSON et als.

1. WILLS. *Construction.* James Browder was the owner of a tract of land. He died leaving a will in which is the following clause: "After the death of my brother's widow, or any circumstance that will give me the right to said property, I wish the said plantation to be offered to my brother, Jephtha Browder, and my sisters, Jane Eldridge, Nancy Bowman, Juda Russell, Polly Jackson, Eliza Winton, or whichever one of them will take it and pay my executors four thousand five hundred dollars, and in default of any of them being willing to pay this sum for it, then my executors to put it up at public sale to the highest bidder, and of the proceeds of the sale in either case to give my said brother and sisters above named the sum of two hundred dollars, except Nancy Bowman, and to her three hundred dollars." Held, that this was not a devise of the land to the brother and sisters at their election, subject to a charge of $4,500, but that a sale of the land was contemplated. If they accepted the offer they took it as purchasers.

2. CHANCERY PRACTICE AND PLEADINGS. *Necessary parties.* In a bill by the brother and sisters to sell the land, the children of the testator being entitled to the surplus after payment of special legacies, were necessary parties.

FROM MONROE.

Appeal from the Chancery Court at Madisonville. O. P. TEMPLE, Ch.

J. H. GAUT and P. B. MAYFIELD for complainants.

GEORGE BROWN for defendants.

MCFARLAND, J., delivered the opinion of the court.

James Browder was the owner of a valuable tract of land in Roane county devised to him by his brother Darius Browder, subject to a life estate in the widow

of said Darius. Said James Browder died about the year 1857, leaving a will and codicil thereto, which were duly proven. The codicil contains the following clause in reference • to the tract of land above mentioned, to-wit: "After the death of my brother's widow" (meaning Darius B.'s widow), "or any circumstance that will give me the right to said property, I wish the said plantation to be offered to my brother Jephtha Browder, and my sisters Jane Eldridge, Nancy Bowman, Juda Russell, Polly Jackson, Eliza Winton, or whichever one of them will take it and pay my executors four thousand five hundred dollars, and in default of any of them being willing to pay this sum for it, then my executors to put it up at public sale to the highest bidder, and of the proceeds of the sale in either case to give my said brother and sisters above named the sum of two hundred dollars, except Nancy Bowman, and to her three hundred dollars." "'The avails" of the plantation after paying the legacies, he directs to be put into his estate to be divided equally amongst his heirs (meaning his children). In a subsequent part of the codicil the testator shows that he had unintentionally omitted the name of his sister Fanny Edington in the above clause, and directs that she be placed in all respects equal to Jane Eldridge as to the two hundred dollars legacy, and the offer of the plantation. Louisa E. Browder, the widow of said James, and James Eldridge became executrix and executor of the will; the latter soon afterward died, and the former is now sole executrix, she having intermarried with Jonathan Wood. The widow

of Darius Browder, the tenant for life, died on the 20th of May, 1863. Jephtha Browder, the brother of James above mentioned, removed to Texas, and died in the year 1863, leaving a large family, some of whom were minors, and others married women, at the commencement of this litigation. The executrix of James Browder, with her husband, remained in possession of the land, and it does not appear whether they took any steps to carry out the above clause of the will, except perhaps to offer to pay one of the legacies mentioned in confederate money. On the 13th of April, 1866, four of the sisters mentioned in the above clause of James Browder's will, to-wit., Polly Jackson, Juda Russell, Fanny Edington and Jane Eldridge, with the husbands of the first three named, filed their bill in the chancery court at Madisonville, in which the foregoing clause of the will is set out, and it is stated that complainants were informed that Jephtha Browder claimed the whole of said tract of land under said will, and his widow and children are claiming the same; that Eliza Winton and her husband, and Nancy Bowman, have declined to pay any of the price of the land fixed by the will, or accept the benefits thereof. They claim that they, with the others, are entitled to the land as a class, and they all have the privilege of paying their part of the $4,500. They say they are willing to pay this sum and accept the devise, or they claim the right to pay their proportion with the other three, that is, Eliza Winton, Nancy Bowman, and the heirs and devisees of Jephtha Browder, all of whom are made parties.

The executrix of James Browder's will, with her husband, are also made parties by an amended bill. They pray a construction of the will, and that the others mentioned be requird to accept or decline the offer of the land, so that the rights of the complainants shall be ascertained and declared. Winton and wife answered, disclaiming all interest under the will except the legacy of $200. An answer was also filed in behalf of the minor children of Jephtha Browder, deceased, residing in Texas, by a guardian *ad litem,*. which, however, contains nothing of importance. On the 6th of December, 1866, *pro confesso* was entered against the other defendants, and a decree rendered which adjudges and declares that all of the parties. named in the clause of James Browder's will are entitled to said land as a class, provided they choose to take it and pay said sum of $4,500, and the decree recites that they had all elected to take the land and pay the money except Mrs. Winton, but they claimed that their money legacies under the will should be deducted from the $4,500. The cause was referred to the clerk to report the amount of these legacies, and if anything had been paid to said legatees, and also whether the land was susceptible of partition, or whether it was to the interest of the devisees to sell the same for partition. Wood and wife are then allowed time to answer, but not to effect the adjudication already rendered. They afterward filed their answer, but no notice was taken of it. The master reported the amount of the money legacies to the brother and sisters, and that the land could not be partitioned. On

Browder *v.* Jackson.

the 4th of June, 1867, the report was confirmed, the legacies declared a credit upon the $4,500, and the land decreed to be sold. · The same decree shows that the court was of opinion that in order to adjust the equities it was necessary to know who had received the rents from the death of Ann D. Browder, the widow of Darius Browder, the life tenant, and if such rents were received by the executrix of James Browder, the same should also be deducted from the $4,-500, and the master was again ordered to report. This report was made, showing the rents received by the executrix, and deducting the same as directed. At this point further steps in this cause was suspended until the filing of the present bill, which was filed in the same court by the children and devisees of James Browder or their representatives. They show that they were not made parties· to the former cause, and insist that the adjudication does not bind them, and pray that the sale be enjoined, and the decrees referred to be suspended and set aside, and pray that the will be again construed, insisting that the brother and sisters had waived their right to take the land at $4,500. An injunction was granted suspending the sale, but this was modified so as to allow the land to be sold, reserving the rights of the parties to the proceeds, and the land was sold on the 25th of September, 1872, for $8,775. On the final hearing the Chancellor dismissed the bill, the effect of which was to allow the adjudication in the former case to stand. The complainants have appealed. The cause was heard at a former term, and a decision then announced, but

we have again considered it upon a petition to rehear. The first question manifestly is, whether the complainants are precluded by the decrees in the former case, or whether they were proper or necessary parties in order to adjudicate the questions involved. This is a question about which it seems there is some uncertainty. Judge Story says, "The truth is, that the general rule in relation to parties does not seem to be founded on any positive and uniform principle, and therefore it does not admit of being expounded by the application of any universal theorem as a test. It is a rule founded partly in artificial reasoning, partly in considerations of convenience, partly in the solicitude of courts to suppress multifarious litigation, and partly in the dictate of natural justice that the rights of persons ought not to be effected in any suit without giving them an opportunity to defend them," and therefore he proceeds to show that the general rule upon the subject is subject to many exceptions. Sto. Eq. Pl., sec. 76c, 8th Ed. But he states the general rule in equity to be "that all persons materially interested, either legally or beneficially, in the subject matter of the suit," or as it is sometimes expressed, "in the object of the suit," are to be made parties either as plaintiffs or defendants, however numerous they may be, so that there may be a complete decree that shall bind them all. See secs. 72, 76a. Where a legatee brings a bill against an executor, other legatees not parties are not bound by the account, the party interested in the surplus is especially necessary. Sec. 73. In a bill to carry into effect the trusts of

a will, the devisee is ordinarily a necessary party. Secs. 180, 181.

It is unnecessary to discuss the exceptions, for they throw no special light upon the question in this case. The object. of the bill in the case under consideration was a construction. of the will of James Browder by which it was claimed that his brothers and sisters were devisees of a valuable tract of land, upon the condition they elected to pay a given sum, and to have the land decreed to them, and to have an account of legacies claimed to be due them under the will. The decree went still further, and ordered an account of the rents and a sale of the land, neither of which were prayed for in the bill. The children of James Browder (the present complainants) were certainly beneficially interested in the result, they are the residuary legatees. In the event the brother and sisters were not entitled to the land it was to be sold, and the surplus of the proceeds to go to the residuary legatees, and as the land was sold for nearly twice the sum of $4,500, they are unquestionably affected by the result to the extent of the difference between the two sums, as well as the rents. On this question they were not represented by the executrix, as she had no direct interest in the question. In fact, the parties directly interested in the subject matter or object of the suit, directly and most materially affected by the adjudication, were the complainants in the cause on the one side, and the present complainants on the other, and no one else had any direct interest in it, and it would seem the present complainants of all

others should have been parties. The executor, it is true, represents all parties as to the personal estate, and if it were conceded that the executor had an absolute power of sale of the land, and had exercised it, those interested in the proceeds would no doubt be bound by his acts, and so where he is trustee. At all events, I am of opinion that if the present complainants were not necessary parties (as I think they were) they were at least proper parties, and having come in before the property was finally disposed of, I think they ought to be heard, and the previous decrees are not conclusive upon them.

The question then recurs as to the proper construction of the will in question. The theory of the complainants in the first cause, which was adopted by the decree of the Chancellor, is, in substance, that the land was devised to the brother and sisters if they elected to take it and agreed to pay $4,500, and the filing of the bill by four of them expressing their willingness to pay said sum was an election which vested the title in them by the terms of the will, the title relating to the death of the testator, and entitling them to rents from the death of the tenant for life. Thereupon they were entitled to have the land sold as their property for partition, the entire proceeds, of course, to go to them. The executor, for the benefit of the estate, to be paid $4,500 and interest (it is to be inferred out of the proceeds of the sale, it not being otherwise provided for). From the $4,500 is to be deducted the legacies to the brother and sisters, and the rents. The result was, the brother

and sisters would receive the entire proceeds of the sale (less about $3,500), being over $5,000, whereas the will directs they be paid out of the proceeds, legacies amounting to $1,300. I am of opinion that the will was not intended as a devise of the land to the brother and sisters at their election, subject to a charge of $4,500, but that it contemplated a sale of the land. The executor was to offer it to the brother and sisters, that is to offer to sell it to them, or to whichever one of them would take it and pay that sum for it, or in default of any of them being willing to pay that sum for it, it was to be sold at public sale. If they accepted the offer, they took it as purchasers, and their title would date from the contract or conveyance to them by the executor. The ordinary words used to pass title to lands by will, such as "devise," "give," etc., are not used; while this is not conclusive it is worthy of consideration in connection with the entire clause and the general purpose. That the testator did not intend to give the land or any part of it to his brother and sisters, is evidenced by the fact that in either event, that is whether they take it at $4,500, or the land be sold at public sale, they are each to be paid out of the proceeds two hundred dollars, except one sister, who is to have three hundred dollars, and no more. This shows that he intended to give all beyond these sums to his children, who were the principal objects of his bounty. The testator intended that the executor should offer to sell the land to his brother and sisters, and he himself fixes the price, which he probably supposed was

the fair value of the land; and it may be conceded that this gave them the right to insist upon the purchase at the price stated, even though the land was of greater value. Still, to give them this right they were required to purchase it. One object probably was to give them a chance to retain the property in the family. It was not intended, in the event the land had to be sold to others, that his brother and sisters should have the benefit of all the land might bring over the sum of $4,500, for the will expressly says that in either event they are to have only the legacies mentioned.

Assuming, then, that the will contemplated a sale by the executor, or an offer to sell, it may be argued that as the will directs the executor "to offer it" to his brother and sisters, that the executor was in default for not having done so, that he was required to take the initiative; that the failure to make the offer authorized the brother and sisters to come into the chancery court as they did to enforce their right. Conceding it to have been the duty of the executor to have taken the initiative and made the offer, still as it was to be simply a purchase of the land at a given price, the brother and sisters had nothing to do but to demand their right to purchase at the price. They were fully informed as to their rights. The will was proven and of record, and in the bill filed by them they do not complain that they were ignorant of their rights, nor do they complain because the land was not offered to them. They put their claim upon the ground that the land was de-

Browder *v.* Jackson.

vised to them. But conceding that they had the right to come into the chancery court to enforce their claim, still, when they came into court they did not propose to purchase the land; they say they were willing to pay the $4,500, but they brought no money into the court, nor did in any manner secure the sum or propose to do so. Three of them were married women. The decree declares the right in favor of the complainants as well as another sister and the children and heirs of Jephtha Browder, who were infants and married women. If the land had sold for a less sum than §4,500, there is nothing to show that the remainder of the price would have been secured, and some of the parties at least would not have been bound to pay it, so that the complainants in that case had nothing to risk without paying or in any way securing the $4,500. They prayed for and obtained a sale of the land; if it sold for a greater sum they had the benefit of the sale; if for a less sum, they had paid nothing, and could well afford to risk the result. True, if the will be considered as a devise of the land to them absolutely, subject to a charge of $4,500, then it was proper to sell the land to pay the sum, and they were entitled to the proceeds of the sale. But I think this is not the proper construction. The brother and sisters not having demanded and enforced their right to purchase at the given price, and the land having been sold to other parties, they are entitled only to their legacies. This I think the fair spirit and meaning of the will, and I think the decree should be accordingly, and the

11—VOL. 3.

court concurring it is so ordered. The costs, however, will be paid out of the proceeds of the sale of the land.